NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

### For the Seventh Circuit
### Chicago, Illinois 60604

Submitted April 21, 2008
Decided May 13, 2008

*Before*

ILANA DIAMOND ROVNER, *Circuit Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

Nos. 05-2007, 05-2008

| | |
|---|---|
| UNITED STATES OF AMERICA, | ] Appeals from the United<br>] States District Court for |
| *Plaintiff-Appellee,* | ] the Northern District of<br>] Indiana, Hammond Division.<br>] |
| v. | ] No. 01 CR 73<br>]<br>] |
| STYLES TAYLOR and KEON THOMAS, | ]<br>] **Charles R. Norgle, Sr.,** |
| *Defendants-Appellants.* | ] *Judge.* |

## O R D E R

This case was previously before this court on a number of issues, including a
*Batson* challenge to the government's use of its peremptory challenge to exclude

African-American potential juror Heshla Watson.  *United States v. Taylor*, 509 F.3d 839 (7th Cir. 2007); *Batson v. Kentucky*, 476 U.S. 79 (1986).  We affirmed the judgment of the district court except as to the *Batson* challenge.  We noted that the district court had not explicitly ruled on the *Batson* challenge related to potential juror Watson, and ordered a limited remand to provide the opportunity for the district court to decide the issue in the first instance.  On remand, the district court held that the peremptory challenge was not exercised in a discriminatory manner.

In our opinion from the initial appeal in this case, we expressed our concern with the government's exercise of the peremptory challenge against Watson.  As its race-neutral explanation for the challenge, the government had pointed to Watson's answer to its question regarding the ability to impose the death penalty on a non-shooter.  When asked whether she could consider imposing the death penalty on a non-shooter, Watson had answered "no," although that statement was ameliorated in subsequent questioning by defense counsel.  Although that type of answer could provide a race-neutral basis for a challenge, we noted that the sincerity of the proffered reason was questionable because Caucasian potential jurors with similar answers were not peremptorily challenged.  In fact, we declared that "[w]e can discern no material difference between Watson and Nowak with respect to their views on the non-shooter issue - the *sole* reason the government supplied for its use of a peremptory strike against Watson."  *Taylor*, 509 F.3d at 844.  We noted that the unexplained discrepancy in treatment made a strong case that the government removed Watson for discriminatory reasons.  We recognized, however, that the third step of *Batson* is a credibility determination and is a question of fact left to the district court in the first instance.  Because the district court had not provided its rationale for denying the *Batson* challenge, we remanded the case for the court to provide those reasons.

On remand, the district court noted that the basis for the peremptory challenge was the same as that articulated by the government in its challenge for cause to potential juror Watson, which was denied. According to the district court, the government was clear that it was concerned with Watson's categorical rejection of imposing the death penalty on a non-shooter. The district court stated:

> The court finds that the government's challenge to potential juror Watson was honestly made and was race neutral.  The strike was not racially motivated.  It was not pretextual.  As the court heard and observed AUSA Benson making the strike, the court concluded his motive was genuine.

The court then stated that Benson's demeanor was professional and candid, and that there was no basis for the court to believe that he was not truthful as to the basis for the challenge. The court concluded that the defendants had failed to prove purposeful discrimination.

As we have repeatedly emphasized, the third step of *Batson* turns on the determination of credibility, and we owe deference to a district court's determination of that issue. *United States v. Stephens*, 514 F.3d 703, 711 (7th Cir. 2008); *United States v. Hendrix*, 509 F.3d 362, 370 (7th Cir. 2007); *United States v. Griffin*, 194 F.3d 808, 826 (7th Cir. 1999). The Supreme Court has recognized that

> [i]n the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'

*Hernandez v. New York*, 500 U.S. 353, 365 (1991); *United States v. Canoy*, 38 F.3d 893, 899 (7th Cir. 1994). Although the district court's decision gives us insight into the demeanor of the prosecutor at the time of exercising the challenge, it provides no credibility determination as to the critical issue, which is why the prosecutor would excuse an African-American potential juror based on the answers to the non-shooter question, but would not excuse a similarly-situated white juror for that same reason. The continued importance of this inquiry was recently recognized by the Supreme Court in *Snyder v. Louisiana*, ___ U.S. ___, 128 S. Ct. 1203 (2008). *Snyder* emphasized that in considering a *Batson* objection, all of the circumstances that bear on racial animosity must be considered, including resolving whether an explanation is plausible in light of the failure to use peremptory challenges against similarly-situated white jurors. *Id.* at 1208, 1211. The Court in *Snyder* also acknowledged, however, that a retrospective comparison of jurors based on a cold appellate record can be misleading, and that an exploration by the trial judge may well reveal that they were not truly comparable. *Id.* at 1211. That inquiry, and a determination as to whether the government's explanation is credible in light of that comparison, is what is missing here. The fault is partly ours for this shortcoming, as we employed only a limited remand and asked the court to assess the challenge in light of the record made during *voir dire*. The court's response

makes clear that the record lacks the evidence needed for that determination, because the district court in assessing credibility failed to address in any way the disparity in the government's use of the challenges.

The unusual circumstances in this case explains the inadequate record. As we noted in *Taylor*, 509 F.3d at 845, the defendants simultaneously raised challenges to two peremptory challenges in a row. The government offered its reasons for the challenges, but the district court addressed only one challenge, and did not focus on Watson. Accordingly, the district court asked no further questions of the government as to Watson, and it is apparent that further questioning is necessary here where its "race-neutral" reason for the peremptory challenge applied equally to a white juror not excluded. It is apparent that an evidentiary hearing is needed for the court to properly develop the record and address this *Batson* challenge. That will allow the court to question the prosecutor as to why the government eliminated Watson based on the non-shooter question but chose not to challenge similarly-situated white jurors. The court must then make the credibility determination based on all of the relevant evidence, properly developed. Therefore, the decision of the district court is VACATED and the case REMANDED for the court to conduct an evidentiary hearing and to determine de novo whether the *Batson* challenge has merit.