In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 05-2007, 05-2008 & 09-1291

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STYLES TAYLOR and KEON THOMAS,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Indiana, Hammond Division.
No. 01-CR-73—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED APRIL 27, 2010—DECIDED MARCH 9, 2011

Before ROVNER, WILLIAMS, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* This case returns to us again on the issue of the prosecutor's use of a peremptory strike against an African-American member of the jury pool. Styles Taylor and Keon Thomas, both African-American, were convicted of robbing and murdering the owner of a gun store in Hammond, Indiana. *See* 18 U.S.C. §§ 924(c) & (j), 1951. The victim was white. During jury selection, the defendants challenged the government's use

of peremptory strikes against several African-American jurors. *See Batson v. Kentucky*, 476 U.S. 79 (1986). The district court denied the *Batson* challenges, accepting the government's proferred nonracial reason for the strikes. Twice we have remanded the case to the district court for further explanation of whether the prosecutor's stated reason was credible with respect to one juror in particular. *See United States v. Taylor*, 509 F.3d 839, 841 (7th Cir. 2007) ("*Taylor I*"); *United States v. Taylor*, 277 F. App'x 610, 612-13 (7th Cir. 2008) ("*Taylor II*").

After our second remand, the district court held an evidentiary hearing and issued a lengthy decision again crediting the prosecutor's explanation for the strike, which had expanded to include multiple new nonracial justifications. The defendants contend in this latest appeal that the scope of the inquiry on remand should have been limited to explaining the original reason offered during voir dire, not adding new ones. We agree. The Supreme Court held in *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005) *("Miller-El II")*, that the validity of a strike challenged under *Batson* must "stand or fall" on the plausibility of the explanation given for it at the time, not new post hoc justifications. Because it is not possible to separate the permissible from the impermissible support for the court's *Batson* determination, we must vacate and remand for retrial.

## I. Background

In 2004 Taylor and Thomas were tried on charges of murder and armed robbery for their involvement in the

fatal shooting of the elderly owner of a gun store in Hammond. The government was seeking the death penalty for both defendants, although it was not clear who actually was the shooter. During jury selection, the prosecutor used peremptory strikes to exclude five African-American members of the jury pool. The strike at issue here involved an African-American juror named Heshla Watson. During voir dire, the prosecutor asked Watson whether she would be able to impose the death penalty on a non-shooter. Watson replied that she would not be able to impose the death penalty on a non-shooter, and she repeated that response when the question was asked again. Defense counsel then asked Watson if she could follow the law; she replied that she would follow the law as instructed and would take into account all the factors she was instructed to consider. The prosecutor moved to strike Watson for cause based on her reservations about imposing the death penalty on a non-shooter. The district court denied this motion. The prosecutor then used a peremptory strike to remove her from the venire.

Jamie Golliday was the next potential juror, and she is also African-American. After the prosecutor used a peremptory strike against her, defense counsel raised a challenge under *Batson* to the removal of both Golliday and Watson. *Taylor I*, 509 F.3d at 843. When asked for a race-neutral explanation for striking Golliday, the prosecutor cited her reluctance to impose the death penalty and her doubts about being able to follow the law. The prosecutor then offered his reason for striking Watson: "And for the record, the juror before her, Heshla

Watson, I believe she was a black—or African American female. She came flat out and said she would not impose a death penalty on the non-shooter." Defense counsel maintained that this explanation was pretextual, arguing that Golliday's and Watson's reservations regarding the death penalty were no stronger than any other juror's and that Watson had responded, just like other jurors, that she would consider a non-shooter's level of participation in determining whether to impose the death penalty. The court denied the *Batson* challenge, but in an apparent oversight did not make any findings regarding the prosecutor's use of a peremptory strike against Watson. *Id.* The defendants were convicted after a lengthy trial on the guilt phase of the case. At the end of Taylor's penalty phase, the jury recommended life imprisonment. Based on that recommendation, the government withdrew its request for the death penalty as to Thomas, and the court sentenced both defendants to life.

On appeal we affirmed the judgment in most respects but ordered a limited remand for the district court to supplement the record with its rationale for rejecting the *Batson* challenge to the government's use of a peremptory strike to remove Watson from the jury pool. *Id.* at 841, 851. Based on the voir dire record, we could "discern no material difference between Watson and [a certain white juror] with respect to their views on the non-shooter issue—the *sole* reason the government supplied for its use of a peremptory strike against Watson." *Id.* at 844. On remand the district judge explained that the prosecutor's rationale for the strike—that Watson categorically rejected the death penalty for a non-shooter— appeared to be credible.

On appeal a second time, we remanded again, specifically identifying a missing link in the district court's decision: The court had "provide[d] no credibility determination as to the critical issue, which is why the prosecutor would excuse an African-American potential juror based on the answers to the non-shooter question, but would not excuse a similarly-situated white juror for that same reason." *Taylor II*, 277 F. App'x at 612. We noted the "unusual circumstances" of the case—that the government had not given its rationale for the strike until after the second of two consecutive peremptory strikes against African-American jurors—and noted that the district court "did not [initially] focus on Watson." *Id.* We explained that an evidentiary hearing was required so that the court could question the prosecutor about his motivation for the strike:

> [I]t is apparent that further questioning [of the government as to Watson] is necessary here where its "race-neutral" reason for the peremptory challenge applied equally to a white juror not excluded. It is apparent that an evidentiary hearing is needed for the court to properly develop the record and address this *Batson* challenge. That will allow the court to question the prosecutor as to why the government eliminated Watson based on the non-shooter question but chose not to challenge similarly-situated white jurors.

*Id*. at 612-13.

At the hearing the government took the opportunity to expand on its rationale for striking Watson,

advancing seven new reasons beyond her response during voir dire to the non-shooter question. The seven new reasons were: (1) Watson's answers on her juror questionnaire showed that she was reluctant to impose the death penalty; (2) other responses to questions during voir dire also suggested that she disfavored the death penalty; (3) she would not identify as closely with the victim, who had served in the military, as would other jurors who had military experience or family members in the military; (4) she likely would not side with the government because her niece and nephew were former police officers who had left their positions after only a year of service; (5) she favored looser gun control; (6) she was less likely to believe testimony from an accomplice; and (7) she had not discussed how she would weigh different circumstances in a defendant's upbringing when considering whether the death penalty should be imposed.

In a 34-page opinion, the district court again credited the government's nonracial reasons for striking Watson. The court accepted the prosecutor's expanded explanation that the strike was based on a comparison of Watson's answers to the death-penalty questions on the juror questionnaire to those of three other jurors who are not African-American—Lilian Nowak, Robert Evans, and Kimberly Wills. The prosecutor reasoned that the juror questionnaires and other voir dire responses suggested that Watson would be less likely to favor the death penalty than either Nowak or Evans. The prosecutor also explained that based on the juror questionnaires and responses given during voir dire, Watson would be less likely than Wills to either follow the law

or impose the death penalty. The court also considered some of the prosecutor's additional justifications for the strike: (1) that Watson approved of felons possessing guns so long as they had permits, while Wills favored stricter gun control; and (2) that Watson had not discussed how she would weigh a defendant's background, while Wills specifically said she would not consider a defendant's difficult upbringing when deciding whether to impose the death penalty. All these explanations, the court found, were credible nonracial reasons for differentiating between the jurors, and so the prosecutor's use of a peremptory strike against Watson was not racially motivated.

## II. Analysis

The use of a peremptory strike to remove a potential juror solely because of his or her race violates the Equal Protection Clause. *Batson*, 476 U.S. at 91; *United States v. Willis*, 523 F.3d 762, 766 (7th Cir. 2008). The familiar *Batson* analysis proceeds in three steps: (1) the defendant makes a prima facie case of discrimination; (2) the government provides a race-neutral explanation for the peremptory strike; and (3) the court decides whether the defendant has established that the government's stated reason is pretext for discrimination. *Batson*, 476 U.S. at 94-98; *Bennett v. Gaetz*, 592 F.3d 786, 791 (7th Cir. 2010).

The focus of this case has been on *Batson*'s third step—more specifically, the credibility of the prosecutor's race-neutral explanation for striking prospective juror Watson. *Miller-El v. Cockrell*, 537 U.S. 322, 338-39 (2003).

This required the trial court to assess the credibility or honesty of the prosecutor's race-neutral rationale. *Lamon v. Boatwright*, 467 F.3d 1097, 1101-02 (7th Cir. 2006). "If a prosecutor's proffered reason for striking a black panelist applies just as well to an otherwise-similar nonblack who is permitted to serve, that is evidence tending to prove purposeful discrimination to be considered at *Batson*'s third step." *Miller-El II*, 545 U.S. at 241. We review for clear error; to reverse we must have a "firm and definite conviction that a mistake was made." *Taylor I*, 509 F.3d at 843; *United States v. Hendrix*, 509 F.3d 362, 370 (2007).

The defendants argue that the district court erred by considering the additional, new reasons the prosecutor offered at the evidentiary hearing conducted on the second remand. They maintain this was impermissible bolstering, and if the court had limited its inquiry on remand to the reason originally offered at voir dire—Watson's answer to the non-shooter question—then pretext has been established.

In *Miller-El II* the Supreme Court considered whether a trial court must confine itself to the initial reasons offered in support of a peremptory strike when a *Batson* challenge is first raised. There, during voir dire, the government had originally defended its use of a strike against a black juror based on the juror's views about the death penalty and rehabilitation. *Miller-El II*, 545 U.S. at 243. But after the defense showed that this reason was based on a misdescription of the juror's testimony, the prosecutor came up with a different reason for the strike; the district court found the new reason

credible, and the Fifth Circuit affirmed. *Id.* at 237, 245-46. The Supreme Court noted the "pretextual timing" of the prosecutor's second reason and said it "would be difficult to credit the State's new explanation, which reeks of afterthought." *Id.* at 246. The Court held that "a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives." *Id.* at 252. Accordingly, *Miller-El II* instructs that when ruling on a *Batson* challenge, the trial court should consider only the reasons initially given to support the challenged strike, not additional reasons offered after the fact. *Id.* at 246-52; *see also Holloway v. Horn*, 355 F.3d 707, 725 (3d Cir. 2004) (noting that "where a prosecutor makes his explanation for a strike a matter of record, our review is focused solely upon the reasons given"); *Turner v. Marshall*, 121 F.3d 1248, 1253 (9th Cir. 1997) (giving no weight to reasons offered by the prosecution after *Batson* hearing because they were not part of the prosecutor's explanation at the hearing).

In this case, when the *Batson* challenge was made, the *only* reason offered by the prosecutor to justify striking Watson was her response to the non-shooter question. As such, on remand the court should have limited its inquiry and analysis to exploring that very question. But the remand hearing went much further. The government compared Watson to jurors Nowak, Evans, and Wills against the backdrop of seven new reasons unrelated to the jurors' willingness to impose the death penalty on a non-shooter. And the district court factored several of these new reasons into its analysis. For instance, the court accepted the government's explanation for striking Watson while keeping Nowak and Evans in

the pool by closely examining the written responses of all three jurors to death-penalty questions on their juror questionnaires. But at the time the *Batson* challenge was made, the prosecutor did not say a word about striking Watson because of her answers on her juror question-naire. Similarly, in crediting the government's explana-tion for striking Watson but not Wills, the court looked beyond their responses to the non-shooter question and analyzed their attitudes toward gun control and how they might evaluate the defendants' backgrounds when deciding whether to recommend the death penalty. But when the *Batson* challenge was made, the prosecutor never tried to justify striking Watson based on her views of either of these issues.

Accepting new, unrelated reasons extending well beyond the prosecutor's original justification for striking Watson amounts to clear error under the teaching of *Miller-El II*, and the government's reliance on these additional reasons raises the specter of pretext. Our decision in *Hendrix* is not to the contrary; in that case, the "add on" race-neutral reasons were offered at the time of the initial *Batson* challenge, not after the fact. *Hendrix*, 509 F.3d at 367. That's obviously not the case here. It's not possible to parse the district court's decision, separating the permissible from the impermissible reasons supporting the court's credibility finding. Ac-cordingly, we must vacate the judgments and remand for a new trial.

VACATED and REMANDED.