*579 Malone, C.J.,
dissenting: I respectfully dissent from the majority’s conclusion that the trial court committed reversible error in overruling Jose Alberto Gonzalez-Sandovals Batson challenge. See Batson v. Kentucky, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986). Specifically, I believe that the majority’s conclusion that the State “must stand or fall on the initial reasons” it provides for striking a minority venire member and that “the trial court is barred from considering” a substitute reason is an incorrect statement of the law. Moreover, that is not what happened in Gonzalez-Sandoval’s case.
Briefly summarized, the record establishes that when Gonzalez-Sandoval objected to the States peremptory challenge of T.R., the prosecutor explained that T.R. had failed to respond to general questions about whether she had ever been involved as a witness in prior cases even though the prosecutor was aware that T.R. had been involved as a witness in two prior cases. One of the cases was referred to as the “Arzate case,” while the other case involved T.R. s son-in-law being questioned about a cell phone. The prosecutor also explained that T.R. avoided a lot of eye contact and she was looking away a lot of times while the prospective jurors were being questioned.
The trial court ruled that T.R.’s failure to maintain eye contact, standing alone, would not be a sufficiently race-neutral basis to excuse her as a juror. However, the trial court ruled that the fact that T.R. did not disclose that she had been questioned by the police or involved with prior investigations, when apparently, she had been involved as a witness in prior cases, was a racially neutral response. Thus, the trial court allowed the State s peremptory challenge over Gonzalez-Sandoval’s objection.
After the jury was selected and the parties returned from lunch, one of tire prosecutors asked for permission to make a record outside the presence of the jury. The prosecutor explained that of the two prior cases she believed T.R. had been involved in as a witness, one of the cases, referred to as the “Arzate case,” did not actually involve T.R. However, tire prosecutor explained that the information about the second case was correct. After hearing this information, Gonzalez-Sandoval renewed his objection to the peremptory *580 challenge, but the trial court indicated its ruling would remain the same.
Then, on the second day of trial, one of the prosecutors again asked for permission to make a record outside the presence of the jury. The prosecutor explained, in the interest of complete candor to the court, that she subsequently had learned that the information about T.R. being involved as a witness in the cell phone case also was mistaken. Plowever, the prosecutor indicated that police records showed that T.R. had been named as a witness in a 2011 investigation of several auto burglaries. Also, records showed that T.R. had been listed as a victim on a criminal damage to property case drat was in the system. Thus, the prosecutor indicated drat although she had been mistaken about the facts of the specific cases, T.R. had been involved as a witness in prior cases but she did not respond to general questions on the subject during voir dire.
Gonzalez-Sandoval renewed his objection to the peremptory challenge. However, the trial court ruled that the prosecutors questions during jury selection were broad enough to have required a response from T.R. about her involvement in the prior cases. The trial court expressed appreciation for counsels candor in correcting the record. The trial court specifically found that the prosecutors had “honestly believed what they represented to tire court, it just turned out to be incorrect.” Thus, the trial court overruled Gonzalez-Sandovals objection to the peremptory challenge.
On appeal, Gonzalez-Sandoval argues that the trial court “erred by overruling [his] Batson challenge to the State s peremptory challenge of [T.R.] when the State acknowledged that the initial reason given was inaccurate.” As the majority correctly states, appellate courts engage in a three-step analysis when reviewing Batson challenges:
“First, the party challenging the strike must malee a prima facie showing that the other party exercised a peremptory challenge on the basis of race. Appellate courts utilize plenary or unlimited review over this step. [Citation omitted.]
“Second, if a prima facie case is established, tire burden shifts to the party exercising the strike to articulate a race-neutral reason for striking the prospective juror. This reason must be facially valid, but it does not need to be persuasive or plausible. The reason offered will be deemed race-neutral unless a discriminatory intent is inherent in the explanation. The opponent of the strike continues to bear the burden of persuasion. [Citation omitted.]
*581 “Third, the trial court must determine whether the objecting party has carried the burden of proving purposeful discrimination. This step hinges on credibility determinations. ‘[U]sually there is limited evidence on the issue, and the best evidence is often the demeanor of the party exercising the challenge. As such, it falls within the trial court’s province to decide, and that decision is reviewed under an abuse of discretion standard.’ [Citations omitted.]” State v. Kettler, 299 Kan. 448, 461-62, 325 P.3d 1075 (2014).
As a preliminary matter, the record reflects that the trial court skipped the first step of the Batson analysis and immediately turned to the prosecutors reasons for exercising a peremptoiy challenge against T.R. as soon as Gonzalez-Sandoval objected. Gonzalez-Sandoval made no attempt to malee a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race, and the district court made no finding that a prima facie case had been established. Without a finding that Gonzalez-Sandoval had made a prima facie showing that the peremptory challenge was based on race, the trial court should not have required the prosecutor to offer a race-neutral reason for striking T.R. Nevertheless, the State did not object to the trial court’s procedure and makes no argument on appeal that Gonzalez-Sandoval failed to malee a prima facie case.
Also, as a preliminary matter, the majority opinion states that the trial court found that the prosecutors explanation about T.R. avoiding eye contact was “a pretext.” The record does not support this statement. The trial court never used the word “pretext” and never found the reason was pretextual. Such a finding would imply that the trial court believed the prosecutor was providing a phony reason for striking T.R. when the real reason was based on race. Instead, the court merely stated that T.R. s failure to maintain eye contact, standing alone, would not be a sufficient basis to excuse her as a juror.
Turning to the issue before the court, the majority opinion relies on Miller-El v. Drake, 545 U.S. 231, 125 S. Ct. 2317, 162 L. Ed. 2d 196 (2005), in finding that the trial court committed reversible error in overruling Gonzalez-Sandoval’s Batson challenge. In that case, Miller-El and his accomplices allegedly shot and tolled a hotel employee and severely injured another during an attempted robbery. During jury selection at the capital murder trial, the prosecution *582 used peremptory strikes against 10 of the 11 black panelists. Miller-El objected, claiming that the strikes were based on race, especially considering the Dallas County District Attorneys office’s history of excluding black jury members. The trial court heard evidence of the alleged discriminatory practices but found no symptomatic exclusion of blacks as a matter of policy. The trial court denied Miller-El’s request for a new jury, and the trial resulted in a conviction and death sentence for capital murder.
Miller-El subsequently filed a petition for habeas relief under 28 U.S.C. § 2254, and he reasserted his claim about the jury selection. The district court and the 5th Circuit Court of Appeals denied Miller-El any relief. On review by the United States Supreme Court, the Court ultimately found, by clear and convincing evidence, five discriminatory practices that supported Miller-Els claim: (1) The striking of black venire members for reasons equally applicable to nonblack venire members who were selected, 545 U.S. at 252; (2) “shuffling” black venire members, 545 U.S. at 254-55; (3) using a graphic description of the death penalty for black venire members but giving a bland description to nonblack venire members, 545 U.S. at 255-56; (4) asking how low of a sentence was appropriate for murder but only informing nonblack panelists of Texas’ 5-year mandatory minimum, 545 U.S. at 261-63; and (5) the Dallas County DA’s office’s use of a jury selection manual encouraging the exclusion of minority jurors. 545 U.S. at 266.
As part of its extensive discussion of Miller-El’s claim, die Court addressed the fact that the lower courts had sustained the prosecution’s actions as nondiscriminatory by substituting their own race-neutral explanations for why the prosecution exercised its peremptory challenges. The Court rejected this practice as improper and stated:
“It is true that peremptoiies are often the subjects of instinct [citation omitted], and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or ah appeals couri, can imagine a reason that might not have been shown up as false. The Court of Appeals’Q and the dissent’s substitution of a *583 reason for eliminating [the juror] does nothing to satisfy the prosecutors’ burden of stating a racially neutral explanation for their own actions.” (Emphasis added.) 545 U.S. at 252.
Returning to Gonzalez-Sandovals case, the majority states that Miller-El stands for the proposition “that prosecutors do not get do-overs when the first reason they provide for striking the minority venire member does not wash. In turn, this means that trial courts should consider only the prosecutors initial explanations for striking the minority venire member.” I believe the majority has read too much into The holding in Miller-El. It is true that Miller-El states that a prosecutor must “stand or fall” on the plausibility of the reasons he or she gives for striking a minority venire member. 545 U.S. at 252. But the opinion does not say that a prosecutor must stand or fall on the plausibility of the initial reasons he or she gives for striking a minority venire member. The opinion in Miller-El does not prohibit a prosecutor from substituting a race-neutral reason for striking a minority juror if the court finds that the prosecutors initial reason is insufficient. Instead, Miller-El holds that the trial court and the appellate courts cannot substitute their own race-neutral reasons to justify the prosecutors peremptory challenge after the courts determine that the prosecutors reasoning is not sufficiently race-neutral.
The majority opinion also cites United States v. Taylor, 636 F.3d 901 (7th Cir. 2011). In that case, Taylor and his accomplice were tried- for murder and armed robbeiy for their involvement in the fatal shooting of a gun store owner in Indiana. Although it was not clear which of the two defendants was the shooter, the government sought the death penalty for both. During jury selection, the prosecution used peremptory strikes to exclude five African-American members of the panel, including W. During voir dire, W. had stated that she would be reluctant to impose the death penalty on a non-shooter, but she also stated that she would follow the law as instructed. Following a Batson challenge, the prosecutor explained that he removed W. because she was reluctant about the death penalty. The district court denied the Batson challenge but did not make any specific findings about the use of the peremptory strike against W. Both defendants were convicted and sentenced to life imprisonment.
*584 The 7th Circuit Court of Appeals remanded for a hearing because the district court provided no credibility determination as to why the prosecutor would excuse an African-American juror based on her answers to the nonshooter question but would not excuse a similarly situated white juror for the same reason. 636 F.3d at 903. However, at the remand hearing, the prosecutor advanced seven new reasons for why the government used a peremptory strike against W., including some of W.’s answers on her juror questionnaire and her statements in voir dire that she favored looser gun control laws. The district court determined that some of the governments new reasons were race-neutral and once again denied the Batson challenge.
On a subsequent appeal, the 7th Circuit reversed the district court s ruling and held that when a case is remanded for the district court to make specific findings on the prosecutor s use of a peremptory strike against a minority juror, the court should have limited its inquiry to the reason the government originally had offered at trial for the peremptory strike. Taylor, 636 F.3d at 905-06. Taylor is factually distinguishable from Gonzalez-Sandovals case. In Taylor, the appellate court remanded a case for die district court to make credibility findings as to the specific reason the prosecutor had given for striking a minority juror, but instead the court allowed the government to offer seven new reasons for making the peremptory strike. Gonzalez-Sandovals case does not involve a remand from an appellate court, but instead the prosecutor came forward while the trial was still in process with corrected information about one of her peremptory strikes.
Returning to our case, the majority opinion concludes as a matter of law that the State “must stand or fall on the initial reasons” it provides for striking a minority venire member and that “the trial court is barred from considering” a substitute reason for striking the minority venire member. I believe this is an incorrect statement of the law. The trial court is not “barred from considering” a substitute reason for striking a minority venire member if the court finds that the prosecutor’s initial reason is insufficient, but the fact that tiie prosecutor is offering a substitute reason is a circumstance that the trial court should consider in assessing “the plausibility of *585 that reason in light of all evidence with a bearing on it.” Miller-El, 545 U.S. at 252.
In any event, Gonzalez-Sandoval’s case does not present a situation where the prosecutor offered a substitute reason for striking T.R. after the district court found that the prosecutors initial reasons were not race-neutral. The prosecutor initially stated that she wanted to strike T.R. for two reasons. First, the prosecutor claimed that T.R. had been involved as a witness in two prior cases, but she did not respond to general questions on the subject during voir dire. Second, the prosecutor explained that T.R. avoided eye contact while the prospective jurors were being questioned. The trial court found that the second reason, standing alone, was not a sufficient reason to excuse T.R. from the jury, but the first reason was a racially neutral response. Later, after the jury selection was completed, the prosecutor made a record that she had been mistaken about the facts of the specific cases involving T.R. The prosecutor explained that T.R. had not been involved in the two specific cases described to the court during jury selection, but police records showed that T.R. had been involved as a witness in other cases, and T.R. failed to disclose this information during general questioning by the prosecutor.
Stated differently, tire prosecutors reasons for striking T.R. as a juror always remained the same, i.e., T.R. did not respond to general questions about being involved as a witness in prior cases and she avoided eye contact during jury selection. The only thing that changed was that the prosecutor came forward with corrected information about the facts of tire prior cases involving T.R. The trial court found that the prosecutors questions during jury selection were broad enough to have required a response from T.R. about her involvement in the prior cases. More importantly, the trial court specifically found that the prosecutor had honestly believed the information she previously had represented to the court. The trial court personally observed the prosecutors demeanor during the hearing on the Batson challenge involving T.R., including the prosecutors subsequent corrections of the record, and found no discriminatory intent or motive by the prosecutor. The Kansas Supreme Court has indicated that an appellate court’s review of the *586 district court s credibility determinations during a Batson challenge is “greatly deferential.” State v. Pham, 281 Kan. 1227, 1237, 136 P.3d 919 (2006).
Next, the majority opinion asserts that “if the State has information about a minority venire member and contemplates using a peremptoiy strike against that venire member based on that information, it should challenge the minority venire member with that information during voir dire absent a compelling reason not to do so.” This assertion makes sense to me, even though I would note that it is well beyond any argument that Gonzalez-Sandoval made in his appellate brief. I agree with the majority that if the State wanted to strike T.R. as a juror based on T.R. s failure to disclose her involvement as a witness in two prior cases, the prosecutor should have questioned T.R. about her involvement in the prior cases during voir dire. That way, Gonzalez-Sandoval’s attorney could have asked T.R. questions about the subject'and the district court would have had a better record upon which to rule on the Batson challenge. It seems fundamentally unfair to allow the State to strike T.R. as a juror based on her failure to disclose her involvement as a witness in prior cases when Gonzalez-Sandoval was not privy to that information during voir dire and there is nothing in the record to support the accuracy of the information. See State v. Collins, No. 96,393, 2007 WL 2239405, at *8-9 (Kan. App.) (unpublished opinion), rev. denied 285 Kan. 1175 (2007) (Malone, J., dissenting in part).
However, the Kansas Supreme Court previously has rejected a very similar argument in State v. Harris, 259 Kan. 689, 915 P.2d 758 (1996). In that case, the defendant was charged with first-degree murder and objected to the State’s peremptory challenge of a minority juror. The State s race-neutral reason for striking the juror was that he “lied on his juror questionnaire, answering no to the question of whether he or any members of his family had been a party to any civil or criminal case.” 259 Kan. at 705. The prosecutor claimed that cases had been filed against a number of the jurors immediate family, although none of this information had been elicited by the prosecutor during voir dire. The district court found that the prosecutors reason was race-neutral, noting that both the juror and the jurors family were known to the court.
*587 On appeal, the defendant argued “that proof should have been brought out on the record during voir dire” of the State s claimed race-neutral reason for striking the juror. 259 Kan. at 706. Our Supreme Court rejected that argument, noting the deference that is generally given to the district courts determination of a Batson challenge. 259 Kan. at 706. The court further acknowledged that “the better practice in this case would be for the district court to have made a record and substantiated the State s claim that the witness made a false statement rather than simply relying on its own knowledge of the persons involved.” 259 Kan. at 706. Nonetheless, the court concluded that the district court s failure to malee a record of the State s race-neutral reason for striking the minority juror was not fatal to the peremptory challenge. 259 Kan. at 706. Thus, under Harris, it appears that it is not an abuse of discretion for the district court to rely on facts not presented at voir dire to determine whether the State s reason for striking a juror was race-neutral.
Finally, the majority opinion asserts that the prosecutor in Gonzalez-Sandoval’s case failed to clearly articulate her questions about whether any of the prospective jurors had ever been involved as a witness in prior cases and that T.R. should not have been expected to respond “to such poorly worded questions.” During voir dire, the prosecutor asked the panel whether anyone had been involved as a witness in prior cases, including the following question: “Has anybody been a witness, just in any land of case where you had to answer questions to a law enforcement officer?” T.R. did not respond to this question, but five other prospective jurors provided information in response to the question. Later, the trial court ruled that the prosecutor’s questions during voir dire were broad enough to have required a response from T.R. about her involvement in prior cases.
Whether the prosecutor sufficiently articulated her questions in voir dire to have required a response from the prospective jurors is not the key issue in resolving Gonzalez-Sandoval’s Batson challenge. The key issue is determining whether the prosecutor engaged in purposeful discrimination by removing' a prospective juror based on race. Batson only requires the prosecutor to articulate a race-neutral reason for striking a minority juror, it does not *588 need to be persuasive or plausible. Kettler, 299 Kan. at 462. Usually there is limited evidence for the trial court to determine whether the objecting party has carried tire burden of proving purposeful discrimination in a Batson challenge, and the best evidence to resolve the issue is often the demeanor of the prosecutor. 299 Kan. at 462. Here, the trial court personally observed tire prosecutors demeanor during the hearing on the Batson challenge, including the prosecutors subsequent corrections of the record, and found no discriminatory intent or motive by the prosecutor. An appellate court should give great deference to this finding. Pham, 281 Kan. at 1237.
To sum up, I have concerns about how the trial court handled Gonzalez-Sandovals Batson challenge involving T.R. It is unfortunate that the prosecutor initially misstated the specific facts concerning the prior cases involving T.R. It is also unfortunate that the prosecutor did not correct this information until after the jury was selected. It also seems unfair to me that the prosecutor was permitted to strike T.R. as a juror based on information that was not brought out on the record during voir dire. The State should not be allowed to use information to strike a minority venire member when the defendant does not have access to tire same information.
But in the end, the prosecutors reasons for striking T.R. as a juror always remained the same: T.R. did not respond to general questions about being involved as a witness in prior cases and she avoided eye contact during jury selection. Batson only requires the prosecutor to articulate a race-neutral reason for striking a minority juror, it does not need to be persuasive or plausible. Kettler, 299 Kan. at 462. More importantly, die trial court personally observed the prosecutors demeanor during die hearing on the Batson challenge involving T.R. and found no discriminatory intent or motive by the prosecutor. An appellate court should give great deference to this finding. Pham, 281 Kan. at 1237. Based on the record presented in this case and Kansas precedent governing Batson challenges, I am unable to conclude diat die trial court committed reversible error in overruling Gonzalez-Sandovals Batson challenge.