The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
May 27, 2021

## 2021COA70

**No. 17CA2058, *People v. Madrid* — No. 17CA2058, *People v. Madrid* — Constitutional Law — Fourteenth Amendment — Equal Protection; Juries — *Batson* Challenges**

In this second direct criminal appeal, the defendant contends
that the district court erroneously denied his objection under
*Batson v. Kentucky*, 476 U.S. 79 (1986), to the prosecution's
peremptory strike of an African-American prospective juror.  In a
prior appeal, a division of the court of appeals concluded that the
district court erred when it determined that the defendant had not
made a prima facie showing that the peremptory strike was based
on race.  The prior division reversed and remanded to the district
court to complete the *Batson* analysis.  Following remand, the
district court conducted further proceedings and concluded that
there had been no *Batson* violation.

Another division of the court of appeals now concludes, as a matter of first impression, that where the prosecution articulates its race-neutral reasons for striking a potential juror during *Batson* proceedings at trial, the district court cannot consider or base its ruling on new justifications offered by the prosecution on remand. Because the district court erred by allowing the prosecution on remand to adopt new race-neutral reasons for striking the prospective juror and then relying on the newly supplied justifications to deny the defendant's *Batson* challenge, the division reverses and remands for a new trial.

Court of Appeals No. 17CA2058
Arapahoe County District Court No. 11CR27
Honorable Carlos A. Samour, Jr., Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Theodore Israel Madrid,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division II
Opinion by JUDGE BROWN
Román and Welling, JJ., concur

Announced May 27, 2021

Philip J. Weiser, Attorney General, Erin K. Grundy, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Lynn Noesner, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1    The People charged Theodore Israel Madrid with one count of first degree murder and two counts of child abuse resulting in death in connection with the death of his then girlfriend's two-year-old son.  The primary disputes at trial centered on the cause of the child's injuries and Madrid's mental state — Madrid argued that the child's death was a tragic accident.  After a nine-day trial, the jury convicted Madrid as charged.  The district court sentenced him to life without the possibility of parole for murder and to concurrent sentences on the child abuse counts.

¶ 2    Madrid appealed his conviction, contending, as relevant here, that the district court erroneously denied his objection under *Batson v. Kentucky*, 476 U.S. 79 (1986), to the prosecution's peremptory strike of an African-American[1] prospective juror.  *People v. Madrid*, (Colo. App. No. 13CA0298, Jan. 12, 2017) (not published pursuant to C.A.R. 35(e)).  A division of this court concluded that the district court erred when it determined that Madrid failed to make a prima facie showing that the peremptory strike was based

---

[1] The prospective juror did not disclose his race or ethnicity, so we cannot determine if he identified as African-American or Black or with another racial group.  The prosecution and defense refer to him as African-American, so we adopt the same nomenclature.

on race.  Thus, it reversed and remanded to the district court to complete the *Batson* analysis.

¶ 3     Following remand, the district court conducted further proceedings and concluded that there had been no *Batson* violation.

¶ 4     Madrid appeals again, contending that the district court erred by, among other things, accepting on remand new race-neutral explanations for the strike that the prosecutor had not articulated during the *Batson* challenge at trial.  We conclude that, where the prosecution articulates its race-neutral reasons for striking a potential juror during the *Batson* proceedings at trial, the district court cannot consider or base its ruling on new justifications offered on remand.  Consequently, we reverse and remand for a new trial.

## I.     Applicable Law and Standard of Review

¶ 5     The Equal Protection Clause of the Fourteenth Amendment guarantees to the defendant that the state will not discriminate based on race in the selection of a jury.  U.S. Const. amend. XIV; Colo. Const. art. II, §§ 16, 25; *Batson*, 476 U.S. at 85-86; *Valdez v. People*, 966 P.2d 587, 589 (Colo. 1998).  The United States Supreme Court has recognized that the exclusion of citizens from jury service

based on race "constitutes a primary example of the evil the Fourteenth Amendment was designed to cure."  *Batson*, 476 U.S. at 85; *see also People v. Rodriguez*, 2015 CO 55, ¶ 9.  The exercise of even a single peremptory challenge on the basis of race violates the Fourteenth Amendment.  *Foster v. Chatman*, 578 U.S. ___, ___, 136 S. Ct. 1737, 1747 (2016); *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008).

¶ 6      Every defendant, no matter the nature of the crime they are accused of having committed, has the "right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria."  *Batson*, 476 U.S. at 85-86.  "Racial discrimination in selection of jurors harms not only the accused whose life or liberty they are summoned to try" but "touch[es] the entire community."  *Id.* at 87.  It undermines public confidence in the fairness of our system of justice.  *Id.*  And it "shamefully belittles minority jurors who report to serve their civic duty only to be turned away on account of their race."  *State v. Sassen Van Elsloo*, 425 P.3d 807, 844 (Wash. 2018) (McCloud, J., concurring) (plurality opinion) (quoting *State v. Saintcalle*, 309 P.3d 326, 332 (Wash. 2013) (plurality opinion)); *see also Batson*, 476 U.S. at 87; *Fields*, 732

3

P.2d at 1151. A person's race is simply unrelated to their fitness to serve as a juror. *Batson,* 476 U.S. at 87; *Valdez,* 966 P.2d at 589.

¶ 7 *Batson* outlines a three-step process for evaluating claims of racial discrimination in jury selection under the Equal Protection Clause. 476 U.S. at 93-98. First, a defendant must make a prima facie showing that the prosecution excluded a potential juror because of race. *Valdez,* 966 P.2d at 590. This standard is "easily satisfied." *Craig v. Carlson,* 161 P.3d 648, 655 (Colo. 2007). "As long as the totality of the circumstances raises an inference of racial motivation, the defendant has satisfied his step-one burden." *Rodriguez,* ¶ 10; *see also Valdez,* 966 P.2d at 590 ("The prima facie standard is not a high one . . . .").

¶ 8 Second, if the defendant establishes a prima facie case, the burden of production shifts to the prosecution to provide a race-neutral explanation for the peremptory strike. *Valdez,* 966 P.2d at 590. Again, this burden is not high. "[T]he prosecution need not provide an explanation that is persuasive or even plausible, so long as the reason is facially race-neutral." *Id.*

¶ 9 Third, if the prosecution tenders a race-neutral explanation, the trial court must allow the defendant an opportunity to rebut the

4

explanation "by showing, for example, that it is pretext." *Id.* Then the trial court must determine the merits of the *Batson* challenge — "[t]he question is whether the court can find by a preponderance of the evidence that one or more potential jurors were excluded because of race." *Id.* The critical question at this stage is the persuasiveness of the prosecutor's justification for the peremptory strike. *Miller-El v. Cockrell (Miller-El I)*, 537 U.S. 322, 338 (2003). But the burden of persuasion remains on the defendant who alleges discrimination in jury selection. *Valdez*, 966 P.2d at 589.

¶ 10    On appeal, each step of the *Batson* analysis is subject to a separate standard of review. *Valdez*, 966 P.2d at 590. We review de novo whether the defendant established a legally sufficient prima facie case that a juror was excluded based on race — though we defer to the trial court's underlying factual findings (e.g., credibility determinations or whether the juror was a member of a cognizable racial group). *Id.* at 591; *see also Rodriguez*, ¶ 13. Similarly, at step two, the facial validity of the prosecutor's justification "is a question of law warranting de novo review." *Valdez*, 966 P.2d at 590. However, the trial court's final determination as to the existence of racial discrimination is an issue of fact that we review

for clear error. *Rodriguez*, ¶ 13; *see also Snyder*, 552 U.S. at 477 ("On appeal, a trial court's ruling on the issue of discriminatory intent must be sustained unless it is clearly erroneous."); *Batson*, 476 U.S. at 98 n.21 ("Since the trial judge's findings in the context under consideration [at step three] largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.").

¶ 11 When a trial court erroneously denies a *Batson* challenge, the remedy is to reverse the conviction and remand for a new trial. *See Flowers v. Mississippi*, 588 U.S. ___, ___, 139 S. Ct. 2228, 2251 (2019); *People v. Ojeda*, 2019 COA 137M, ¶ 35 (*cert. granted* Aug. 17, 2020).

## II. Background

### A. Madrid's *Batson* Challenge at Trial

¶ 12 Before jury selection, prospective jurors filled out questionnaires to give the parties basic information about themselves. Prospective Juror T indicated on his questionnaire that he was sixty-eight years old, was married with children, was a retired customer service specialist, had experience in security, enjoyed gardening, and watched television.

¶ 13    After the district court excused six jurors for cause and one for undue hardship, it called seven new prospective jurors into the jury box for questioning, including Prospective Juror T.  The court gave each side approximately five minutes to question the seven new prospective jurors.

¶ 14    During that limited time, the following colloquy occurred between the prosecutor and Prospective Juror T:

> [Prosecutor]: So, [Prospective Juror T], any issues that you had with anything that either of us had said or anything that the court has said as far as the instructions of law?
>
> [Prospective Juror T]: No, not yet.
>
> [Prosecutor]: Not yet.  Okay.
>
> Any concerns about having to look at – potentially having to look at autopsy pictures in the case?
>
> [Prospective Juror T]:  No.
>
> [Prosecutor]:  No?  Okay.
>
> Anything you want to tell us?
>
> [Prospective Juror T]:  No.
>
> [Prosecutor]:  Do you have a good joke?
>
> [Prospective Juror T]:  I'm the joke.

This was the entirety of the prosecutor's questioning of Prospective Juror T.

¶ 15 Shortly thereafter, the prosecution used its ninth peremptory strike to excuse Prospective Juror T from the jury. Madrid's attorney raised a *Batson* objection, arguing,

> Judge, at this time we're raising an equal protection challenge and a *Batson* challenge in regards to [Prospective Juror T]. [He] was one of the last people on the jury. According to his questionnaire, he's fact neutral. He was asked a few questions by both parties and he gave very short answers and seemed to be unbiased. I don't see any other reason why he would be dismissed at this time.

¶ 16 Without awaiting a ruling from the district court as to whether Madrid had made a prima facie showing that Prospective Juror T had been removed from the jury on the basis of race, the prosecutor responded with her race-neutral reasons for striking him:

> Judge, first of all, he's being replaced by another African-American juror. So, I don't think that they can really claim that this is not race neutral. But the real problem is we don't know very much about him. He has a hearing issue it appears and he's sort of completely nonresponsive. We have very little information on him from the questionnaire and no time to really have a very detailed conversation with

8

him.  Terribly uncomfortable with him where we have very little information.[2]

¶ 17    The district court repeated back to the prosecutor the grounds that she had stated for excusing Prospective Juror T: "[Y]ou're saying that you're excusing him because of the little information that was provided in the questionnaire and the brief opportunity you had to question him and then I think you also mentioned that . . . you think he has an issue with his ability to hear?"  The prosecutor said, "He appears to and I could have just been mumbling but he appeared to me."  The prosecutor did not offer any other reasons for the strike.

¶ 18    The court found that the defense had not met its burden to demonstrate, under the totality of the circumstances, an inference

---

[2] The first reason given, that Prospective Juror T would be replaced by another African-American juror, cannot be the basis to deny Madrid's *Batson* challenge.  As a matter of law, "[t]he striking of a single potential juror for a discriminatory reason violates the Equal Protection Clause even where jurors of the same race as the stricken juror are seated." *People v. Collins*, 187 P.3d 1178, 1184 (Colo. App. 2008); *see Miller-El v. Dretke*, 545 U.S. 231, 249-50 (2005) (The "late-stage decision to accept a black panel member" did not "neutralize the early-stage decision to challenge a comparable venireman.").

of purposeful discrimination, and thus it denied Madrid's *Batson* challenge at step one.

¶ 19    The next day, the district court allowed the prosecutor to make a supplemental record on Madrid's *Batson* challenge.  The prosecutor gave no further explanation regarding her decision to strike Prospective Juror T.

¶ 20    So, after being given two distinct opportunities to explain why it excused Prospective Juror T, the prosecution offered the following three reasons: (1) he provided little information on his juror questionnaire; (2) the prosecution had limited time to question him; and (3) he may have trouble hearing.

### B.    Madrid's First Appeal

¶ 21    On direct appeal, a division of this court determined that the district court erred by finding that Madrid did not meet his burden at step one of *Batson*.  *Madrid*, No. 13CA0298, slip op. at ¶ 20.  It determined that the appropriate remedy was to remand the case for further proceedings and instructed that, "[b]ecause the [district] court did not complete the three-step *Batson* analysis, the court shall take additional evidence and allow further argument at the request of either party."  *Id.* at ¶ 22.

10

## C. *Batson* Hearing on Remand

¶ 22 The district court conducted a hearing on remand. Defense counsel argued that the prosecution should not be allowed to introduce any new race-neutral explanations for its use of a peremptory challenge on Prospective Juror T because it already made its record during the *Batson* challenge at trial. The district court rejected defense counsel's argument, noting that, even though it allowed the parties to make a record at trial, it had stopped its analysis at step one. It also explained that it understood the remand order as requiring it to accept additional evidence and argument at the request of either party.

¶ 23 The prosecutor who conducted voir dire testified on remand that she initially did not remember who Prospective Juror T was but that over time her memory of him returned. She first said Prospective Juror T was slow to take his seat, she believed he sighed, and he appeared displeased to be the next person on the presumptive jury. She then testified she had a hard time getting Prospective Juror T to engage with her. He did eventually warm up, she said, but not to the point that she became comfortable with him. She continued,

I was concerned that there was some reason why he did not want to have to be here. I had no idea what that reason might be because we didn't really have a lot of information. I didn't know if he was worried about something in his personal life or concerned about being away from his job for some significant period of time or if there was something about the nature of the crime that was not sitting well with him or what.

¶ 24 The prosecutor acknowledged that she used the term "nonresponsive" to describe Prospective Juror T during the *Batson* challenge at trial but, upon reflection, believed "unengaged is a better word." She noted that the lack of information on Prospective Juror T's questionnaire supported her opinion that he was not engaged in the process. And she acknowledged that she expressed concerns at trial about Prospective Juror T's hearing, but said his hearing was "absolutely not" the issue. Instead, she reframed her concern about his hearing as relating "to the whole I don't want to be here, and I'm not engaging with you" issue.

¶ 25 During cross-examination, the prosecutor confirmed that she spent less than a minute questioning Prospective Juror T, she did not ask for more time to question him, and she did not ask him about anything on his questionnaire. The prosecutor acknowledged

12

that Prospective Juror T indicated on his questionnaire that he was retired, that serving as a juror would not cause him hardship, and that there was no reason he could not be fair and impartial. Significantly, the prosecutor conceded that she did not make a record at trial that Prospective Juror T sighed, was slow to take his seat, or seemed displeased to be there.

¶ 26    At the end of the hearing, the prosecution articulated its rationales for striking Prospective Juror T, which it admitted "expand[ed] upon" the trial record and included (1) his nonresponsiveness, nonparticipation, disengagement, and failure to connect with the prosecutor; (2) the lack of information about him; and (3) that "he did not want to be [t]here."  The court found that the prosecution had provided facially race-neutral reasons to strike Prospective Juror T and moved on to step three of the *Batson* analysis.

¶ 27    Defense counsel emphasized in her argument that the prosecutor had articulated "new justifications" beyond those given at trial for the peremptory strike, including that Prospective Juror T was nonparticipatory and did not want to be there.  The shift in the prosecutor's reasons, defense counsel argued, suggested they were

pretextual. Defense counsel highlighted facts that tended to undercut the prosecution's explanations and compared Prospective Juror T to other jurors who were arguably similarly situated.

¶ 28    In the end, the district court concluded that Madrid had not met his burden to prove that the prosecution had removed Prospective Juror T from the jury because of his race.

### III.    Analysis

¶ 29    Madrid contends that the district court erred by denying his *Batson* challenge. Specifically, he argues that the court erred by (1) allowing the prosecution on remand to offer new race-neutral reasons for striking Prospective Juror T; (2) offering its own race-neutral reason for striking Prospective Juror T; (3) failing to recognize the prosecutor's shifting explanations as evidence of pretext; (4) overlooking other relevant evidence of pretext; (5) ignoring a trend by the prosecutor's office of striking minority jurors; (6) concluding there were no similarly situated jurors whom the prosecution did not strike; (7) relying on its own history with one of the prosecutors to support its ruling; and (8) failing to consider the role implicit bias played in the prosecutor's decision to strike Prospective Juror T.

¶ 30    We agree with Madrid that the district court erred by allowing the prosecution on remand to adopt new race-neutral reasons for striking Prospective Juror T that it had not articulated at trial and then relying on the newly supplied justifications to deny Madrid's *Batson* challenge.  Thus, we reverse and remand for a new trial.  Because of this disposition, we need not consider Madrid's remaining contentions.

A.    The District Court Erred by Denying the *Batson* Challenge

¶ 31    The division in Madrid's first appeal concluded that because the district court erred at step one, it had not continued to steps two and three of the *Batson* analysis.  The *Batson* proceedings at trial, however, were not so tidy.

¶ 32    Defense counsel raised a *Batson* objection when the prosecutor used a peremptory challenge on Prospective Juror T and explained the reasons why the strike was racially motivated.  But the district court did not determine, based on those reasons, whether Madrid had made a prima facie showing.  Instead, the prosecutor immediately stated her race-neutral reasons for excusing Prospective Juror T, which is the second step of *Batson.*  The district court then volunteered its own view of Prospective Juror

T, which acknowledged the prosecutor's stated reason that Prospective Juror T might have a hearing problem, but included novel concerns not raised by either party:

> I also note that my read of [Prospective Juror T] when I first called his name was that *he didn't seem like he wanted to be here.* He is soft-spoken. I don't know whether that means he has a hearing problem or not. He may. But he does mumble, he is soft spoken, and he's hard to understand. And as I said . . . *it seemed to me that based on his demeanor, he doesn't want to be here,* or at least when I called his name he didn't want to be here. *He seemed disappointed that I called his name when he started walking to the front of the courtroom.*

(Emphasis added.) Thereafter, the court concluded that Madrid had failed to meet his step-one burden.

¶ 33 The following day, the district court allowed the prosecutor to make an additional record on the *Batson* challenge. Instead of further explaining her decision to strike Prospective Juror T, however, the prosecutor explained her earlier decision to strike another African-American prospective juror. When defense counsel next mentioned that the district court had "made an observation that [Prospective Juror T] appeared he didn't want to be here," with which defense counsel disagreed, the court explained,

16

Initially. I said initially when I called his name, *his face indicated to me at least that he didn't seem happy that I had called his name.* Now, he wasn't the only one. There were a few other people, a couple of other people that had that reaction. But his expression or reactions to that in my mind — *I remember him sort of slowly walking to the front of the courtroom, sort of dragging his feet,* and he sort of — and just seeming like he was unhappy that he'd been called.

(Emphasis added.)

¶ 34 Then, at the *Batson* hearing on remand, the district court allowed the prosecution to present evidence and argument in support of race-neutral reasons the prosecutor did not articulate at trial — namely, that Prospective Juror T was disengaged and did not want to be there.

¶ 35 As an initial matter, it is improper for a trial court to offer its own race-neutral reason for the prosecution's use of a peremptory strike. *Valdez,* 966 P.2d at 592 n.11 ("The trial court in this case sua sponte offered its own plausible reasons behind the peremptory strikes at issue. This was improper."); *Ojeda,* ¶ 13 (same). As the United States Supreme Court has explained,

> *Batson* provides an opportunity to the prosecutor to give the reason for striking the juror, and it requires the judge to assess the

17

plausibility of that reason in light of all evidence with a bearing on it . . . . *A Batson challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.*

*Miller-El v. Dretke (Miller-El II)*, 545 U.S. 231, 251-52 (2005) (emphasis added); *see Ojeda,* ¶ 63 (Harris, J., specially concurring) (It is an error for the trial court to volunteer its own justification because, "under *Batson,* the question is not an objective one — could a race-neutral reason be divined from the record? — but a subjective one — did the prosecutor strike the juror based on race?").

¶ 36   We recognize that *Batson* challenges arise in real time in the heat of trial, and that the lines between each step of the *Batson* analysis often become blurred. Indeed, it is not atypical, as occurred here, for the prosecution to offer its race-neutral reasons for excusing a juror before the court rules on whether the defense has met its step-one burden. Even so, a trial court must resist the urge to supply its own reasons justifying the use of a peremptory

18

strike and instead rely only on the reasons and arguments articulated by the prosecution and defense.

¶ 37    But the reversible error in this case was the district court's consideration of and reliance on different justifications for the strike than the ones the prosecutor articulated at trial because "*Miller-El [II]* . . . instructs that when ruling on a *Batson* challenge, the trial court should consider only the reasons initially given to support the challenged strike, not additional reasons offered after the fact." *United States v. Taylor*, 636 F.3d 901, 905 (7th Cir. 2011) (citing *Miller-El II*, 545 U.S. at 246-52).

¶ 38    In *Miller-El II*, the prosecution originally defended its use of a peremptory challenge against a Black juror based on the juror's views about the death penalty and rehabilitation.  545 U.S. at 243. But after defense counsel showed that this reason was based on a misdescription of the juror's testimony, the prosecutor stated a different reason for the strike.  *Id.* at 237, 245-46.  The Supreme Court noted the "pretextual timing" of the prosecutor's second reason and said it "would be difficult to credit the State's new explanation, which reeks of afterthought."  *Id.* at 246.  The Court explained,

> It is true that peremptories are often the subjects of instinct, *Batson v. Kentucky, supra*, at 106, 106 S. Ct. 1712 (Marshall, J., concurring), and it can sometimes be hard to say what the reason is. But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives.

*Id.* at 252; *see also Taylor*, 636 F.3d at 906 (concluding that the trial court clearly erred by considering new reasons for prosecution's strike at remand hearing); *Holloway v. Horn*, 355 F.3d 707, 725 (3d Cir. 2004) (rejecting prosecution's "attempt to recast the prosecutor's stated reasons" because "where a prosecutor makes his explanation for a strike a matter of record, our review is focused solely upon the reasons given"); *Turner v. Marshall*, 121 F.3d 1248, 1253 (9th Cir. 1997) (giving no weight to reasons offered by the prosecution after *Batson* hearing because they were not part of the prosecutor's explanation at the hearing), *overruled on other grounds by Tolbert v. Page*, 182 F.3d 677, 685 (9th Cir. 1999) (en banc).

¶ 39    At trial, the prosecutor provided her race-neutral reasons for striking Prospective Juror T, which the district court confirmed were that (1) he provided little information on his juror

questionnaire; (2) the prosecution had limited time to question him; and (3) he may have trouble hearing. Those reasons did not include a perception that Prospective Juror T did not want to be there or that he sighed, walked slowly, or dragged his feet when called. Such observations may have been accurate, but they were not the reasons the prosecutor stated for excusing him.

¶ 40 On remand, the prosecution admittedly "expand[ed] upon" its prior justifications and adopted new race-neutral reasons, which the court summarized as (1) Prospective Juror T's nonresponsiveness, nonparticipation, disengagement, and failure to connect with the prosecutor; (2) the lack of information about him, which the district court of its own accord explained "forces the [p]rosecution to rely on demeanor and specifically to focus on the prospective juror's inability to engage or unwillingness to engage or to participate or to connect with [the prosecutor]"; and (3) that "he did not want to be [t]here."

¶ 41 In the end, the district court relied on the new demeanor-based justifications to deny Madrid's *Batson* challenge. Although the prosecution articulated what it characterized as three distinct race-neutral reasons for striking Prospective Juror T, the court

found the reasons to be "interrelated" and understood them collectively to mean that the prosecution "felt that [Prospective Juror T] did not want to be here and did not want to be on the jury in the trial of this particular case."[3] The court found this race-neutral justification "very reasonable and probable," explaining that "[i]t is not surprising that the People wanted to strike someone who appeared like he did not want to be on the jury and who . . . would not connect with [the prosecutor], engage with her, or be responsive to her."

¶ 42    It is true that the remand order from the prior appeal instructed the district court to "take additional evidence and allow further argument at the request of either party" and to make further

---

[3] Of the ten reasons that the court articulated in support of its ruling, seven included reference to Prospective Juror T not wanting to be there. The only reasons the court articulated that did not relate to this demeanor-based justification were that (1) the trial prosecutor's reaction to the *Batson* challenge was appropriate and the court had never sustained a *Batson* challenge against the prosecutor conducting the remand hearing; (2) the court did not find persuasive defense counsel's attempt to establish a pattern of discrimination by the Arapahoe County District Attorney's Office; and (3) the court likely would not have granted the prosecution additional time to question Prospective Juror T had more time been requested at trial. These reasons do not relate to the prosecution's articulated race-neutral reasons for striking Prospective Juror T.

findings on Madrid's *Batson* claim. It is also true that we review the district court's final determination as to the existence of racial discrimination for clear error. *Rodriguez*, ¶ 13. But where the prosecution has already articulated its race-neutral reasons for excusing a potential juror during *Batson* proceedings at trial, offering new reasons on remand "raises the specter of pretext," *Taylor*, 636 F.3d at 906, and the district court's acceptance of and reliance on the new reasons to deny the *Batson* challenge amounts to clear error. *See Miller-El II*, 545 U.S. at 252; *Taylor*, 636 F.3d at 905.

¶ 43 Because we find it impossible to parse the district court's ruling — to separate its reliance on the justifications the prosecution articulated at trial from its reliance on the impermissible post-remand justifications — we must reverse the judgment of conviction and remand for a new trial.[4] *See Taylor*, 636 F.3d at 906.

---

[4] Concluding that the district court erred by denying the *Batson* challenge on this basis is not the same as concluding that the prosecutor's use of a peremptory challenge on Prospective Juror T was motivated by racial animus. *See People v. Ojeda*, 2019 COA 137M, ¶¶ 72-77 (Harris, J., specially concurring) (*cert. granted* Aug.

## B. Remaining Contentions

¶ 44    Madrid also contends that the district court erred by overlooking other relevant evidence of pretext; ignoring a trend by the prosecutor's office of striking minority jurors; concluding there were no similarly situated jurors whom the prosecution did not strike; relying on its own history with the prosecutor conducting the remand hearing to support its ruling; and failing to consider the role implicit bias played in the prosecutor's decision to strike Prospective Juror T. Because we remand for a new trial, we need not address these contentions. *Flowers*, 588 U.S. at ___, 139 S. Ct. at 2251; *Ojeda*, ¶ 35.

## IV. Conclusion

¶ 45    The judgment of conviction is reversed, and the case is remanded to the district court for a new trial.

JUDGE ROMÁN and JUDGE WELLING concur.

---

17, 2020). Rather than showing invidious bigotry, a lawyer's reliance on stereotypes to select sympathetic jurors more often reflects a professional effort to fulfill the lawyer's obligation to help his or her client. *Id.* at ¶ 73. "Nevertheless, the outcome in terms of jury selection is the same as it would be were the motive less benign." *Id.* at ¶ 75 (citation omitted).