In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-1559

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

CHRISTOPHER MICHAEL HORTON,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:13-cr-30042 — **David R. Herndon**, *Judge.*

ARGUED OCTOBER 9, 2014 — DECIDED OCTOBER 21, 2014

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

PER CURIAM. Christopher Horton, a karate instructor who used his iPhone to film himself sexually molesting three of his young students, pleaded guilty to six counts of sexually exploiting a child. *See* 18 U.S.C. § 2251(a). Horton's guidelines range was life, subject to a statutory maximum sentence of 30 years on each count. *See id.* § 2251(e). The district court imposed a 90-year prison sentence, which Horton argues is substantively unreasonable.

Because Horton has failed to rebut the presumption of reasonableness afforded to his within-guidelines sentence, we affirm.

During a 9-month period while Horton was employed at Three Tigers Karate in Belleville, Illinois, Horton created 37 videos depicting himself engaging in sexually explicit conduct with three of his male students (ages 6, 7, and 10), and another video showing himself trying to convince another student (age 7) to display his genitals. Horton created the videos in various places: his home, the karate studio, a public park, and the San Antonio home of one the victims.

Horton, then 20, was living with his mother in Highland, Illinois when, in early 2013, she noticed child pornography on his phone. She told her boyfriend, who reported Horton to the police on February 11. Later that day police visited Horton's home and spoke with his mother, who confirmed that she had seen an image on his phone of Horton performing oral sex on a 10-year-old boy. The police then went to the karate studio and arrested Horton. During a police interview, Horton admitted that he sexually abused three minor boys who attended the karate studio and used his phone to film the acts, which included oral sex.

The investigation revealed how Horton gained access to the victims outside of class and convinced them to engage in sexual activity. Horton succeeded in getting the victims alone by earning their parents' trust and offering private karate lessons, at which he molested the students in their own home or in the karate studio's back room while other students were in the main studio taking lessons. Horton convinced one of the victims to touch his, Horton's, privates by promising to buy him a Nintendo 3-DS.

There were also text files on Horton's cell phone containing messages he had drafted instructing the boys on sex, masturbation, and orgasms; encouraging them to send him pictures of their penises; and giving them code words to use in text messages to avoid detection by their parents.

Horton entered an open plea of guilty to five counts of sexually exploiting a minor, *see* 18 U.S.C. § 2251(a), and one count of attempting to do the same, *see* 18 U.S.C. § 2251(e).

A probation officer prepared a presentence report and calculated a total offense level of 43 (which would have been 48 but for the ceiling at 43, *see* U.S.S.G. ch. 5, pt. A, cmt. n.2) and criminal history category of I, yielding a guidelines range of life. But the offense carries a 30-year statutory maximum sentence for each count, so the statutory ceiling replaces Horton's guidelines range. *See* 18 U.S.C. § 2251(e). And when there are multiple counts of conviction, as there are here, the guidelines instruct the sentencing court to impose maximum and consecutive sentences to achieve what the guidelines sentence would have been but for the statutory maximum. *See* U.S.S.G. § 5G1.2(d); *United States v. Veysey,* 334 F.3d 600, 602 (7th Cir. 2003); *United States v. Thavaraja,* 740 F.3d 253, 357 n.3 (2d Cir. 2014); *United States v. Lewis,* 594 F.3d 1270, 1275–76 (10th Cir. 2010).

At his lawyer's request, Horton was evaluated before sentencing by clinical psychologist Dr. Daniel Cueno, who conducted a sexual offender assessment. During his formative years, Horton recounted to Dr. Cueno, his mother worked as a stripper and escort and would leave pornographic magazines, sex toys, and drug paraphernalia strewn around the house. His father was as an alcoholic and drug abuser. Horton watched a

XX-rated movie when he was seven and acted out what he saw in the movie by having oral sex with other children. In first grade he was forced to perform oral sex on a classmate, and he began having consensual intercourse when he was 12. According to Dr. Cueno, the "roots for [Horton's] difficulties can be traced back to a childhood where he was sexualized at an early age, had little stability, and was raised by a drug abusing, stripper/escort mother who provided him with little, if any stability." In Dr. Cueno's opinion, Horton was a high risk for reoffending because he had "no real concept of what is appropriate sexuality" and "no concept of limits," and recommended treatment for his "psychological and sexual difficulties."

While awaiting sentencing, Horton penned a 35-page letter to the court in which he tried to explain why he sexually assaulted his students.

> I think I did what I did because … I didn't know why or what made me the way I was or am. I needed someone like me, to see if they would grow to be like me one day. My theory was, if they were introduced to it at a certain age, would they too, be sexually confused, or share similar desires in the future.

He recounted the "horrible people" who surrounded him in his youth, asserted that he wanted to be cured of his dysfunctional sexual compulsions, and expressed regret that he was "too smart" for counseling—in which he participated from age 2 to 18—to have been successful. He also asserted that it would be "ridiculous" to imprison him for decades because, he insisted, mass murderers get lighter sentences.

Both parties argued for a guidelines sentence but disputed what length would be appropriate. Horton sought a 25-year sentence, pointing to his "highly unusual and extreme" upbringing and the prospect that his youth would allow him to benefit from treatment while incarcerated; if treatment proved ineffective, he added, the government could petition to stay his release and initiate civil commitment proceedings. *See* 18 U.S.C. § 4248. The government sought 60 to 70 years, which it believed was necessary to punish Horton for exploiting his position of trust and destroying the lives of four young children and their families, and to assure that a dangerous sex offender would not be released into society.

The prosecutor also presented victim impact statements written by the relatives. The families recounted that the boys suffered from nightmares, sleepless nights, anger, bed wetting, and poor concentration at school, and asked the judge to lock up Horton for the rest of his life.

The district court sentenced Horton to 90 years. The court acknowledged Horton's abnormal childhood but concluded that aggravating factors "weigh heavily, heavily against him." For example, this was not a typical child pornography case, the court explained, because of the "predatory nature" of Horton's repeated acts in soliciting his young students for sexual encounters. Horton's case, the judge continued, was "one of the most serious and heinous" he'd seen in his 15 years on the bench:

> [T]he statement that the Defendant made in his letter that one of the reasons why he did this was to seek out people that he could see if they were like him and see if they would grow to be like him one day. [The prosecutor] used the phrase "an experiment", and it

> is horrifying to think that somebody would use little
> children as though they were some sort of petri dishes
> or test tubes to see if they could turn out to be like him
> because of what he went through, knowing his terrible
> background. And that is … an indication that the
> Defendant is a very dangerous person. And dangerous,
> I would suggest, like the guideline computation, off
> the chart.

On appeal Horton contends that his 90-year within-guidelines sentence—effectively a life sentence—exceeds the bounds of reason. He insists that his sentence does not adequately account for his unstable upbringing, which included living in an "environment devoid of appropriate boundaries regarding sex and children." His relative youth also should have been taken into account, he adds, because he was still maturing and would gain better impulse control with time.

Because Horton's guidelines range was life, any prison sentence in effect would be presumptively reasonable on appeal. *See United States v. Tanner,* 628 F.3d 890, 908 (7th Cir. 2010). "To sustain the presumption, a district court need provide only a justification for its sentence adequate to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Pilon,* 734 F.3d 649, 656 (7th Cir. 2013) (internal quotation marks and citation omitted). And the presumption may be rebutted only by showing that the sentence is unreasonable when measured against the factors in 18 U.S.C. § 3553(a); this includes demonstrating that the district court failed to properly consider mitigating factors. *See United States v. Singleton,* 588 F.3d 497, 501 (7th Cir. 2009); *United States v. Mykytiuk,* 415 F.3d 606, 608 (7th Cir. 2005).

Horton has not demonstrated that his de facto life sentence is unreasonable. Although a sentence that is effectively for life "is not to be ordered lightly," we have upheld such sentences where the sentencing judge recognized "the likelihood of a defendant's death in prison, but concluded that other factors warranted the particular sentence." *United States v. Vallar*, 635 F.3d 271, 280 (7th Cir. 2011) (internal quotation marks and citation omitted); *see United States v. Noel*, 581 F.3d 490, 492–93, 500–01 (7th Cir. 2009) (80-year sentence reasonable for producing child pornography where defendant did not molest victim); *United States v. Chapman*, 694 F.3d 908, 915–16 (7th Cir. 2012) (40-year sentence reasonable for 46-year-old defendant who produced child pornography). Here, the district court appropriately weighed Horton's age and difficult upbringing, *see* 18 U.S.C. § 3553(a)(1), against the "extremely serious nature of this crime" and the vulnerability of the victims, *see id.* § 3553(a)(1), (a)(2)(A); *New York v. Ferber*, 458 U.S. 747, 758–60 & n.9–10 (1982), the need to protect the public from a dangerous child molester, *see* 18 U.S.C. § 3553(a)(2)(A), (C), and the availability of sex-offender treatment in prison, *see id.* § 3553(a)(2)(D). And though Horton would have preferred the district court to have given more weight to his dysfunctional childhood, the court had the discretion to assign it less weight than the other § 3553(a) factors. *See United States v. Smith*, 721 F.3d 904, 908 (7th Cir. 2013).

AFFIRMED.