In the

# United States Court of Appeals

### For the Seventh Circuit

———————————

Nos. 17-2986 and 17-3145

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

STYLES TAYLOR and
KEON THOMAS,

*Defendants-Appellants.*

———————————

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:01-cr-00073-JTM-PRC — **James T. Moody**, *Judge.*

———————————

ARGUED SEPTEMBER 18, 2018 — DECIDED OCTOBER 31, 2018

———————————

Before SYKES, BARRETT, and ST. EVE, *Circuit Judges.*

ST. EVE, *Circuit Judge.* This is a case of one tragedy begetting another. Styles Taylor and Keon Thomas grew up as no child should: abandoned by their fathers, abused by their mothers, and beset by poverty. With little, they, unfortunately, turned to crime. As young adults they robbed a local gun shop, and in the process Taylor shot and killed the shop's owner—a 73-year-old, near-deaf World War II veteran and

grandfather. Taylor and Thomas were charged with multiple offenses, including felony murder. *See* 18 U.S.C. §§ 924(c), (j).

Their case is now before us for a fifth time. In this appeal, Taylor and Thomas challenge their respective life sentences as substantively unreasonable in light of mitigating factors, most notably, their troubled upbringings. The facts of this case are indeed difficult, but the law is clear. Where, as here, a district judge thoroughly examines and rejects the defendant's mitigation arguments in issuing a within-guidelines sentence, we presume that the sentence is reasonable. Taylor and Thomas have not rebutted that presumption, so we affirm.

**I.**

Taylor and Thomas were raised in Hammond, Indiana. They sold drugs together but did not make enough money to get ahead, causing them to escalate their crime. On the morning of March 20, 2000, the pair left a birthday party at Taylor's home. When they returned, they shared with some of their friends and relatives that they had just committed a robbery and that Taylor had "hit a lick."

The two had robbed a gun shop, Firearms Unlimited. During the armed robbery, Taylor held the shop's owner, Frank Freund, at gun point. Some testimony suggested that Taylor believed he saw Freund reach for a gun, causing Taylor to shoot Freund. Other facts made that testimony implausible: forensic evidence showed that Freund was chewing a sandwich at the time Taylor shot him. Either way, Freund was hit twice, once in the neck and once in the face. Evidence indicated that Taylor and Thomas made out with numerous firearms, which they later sold on the streets. Some of the weapons made their way to Chicago; others were never found.

A grand jury returned an indictment against Taylor and Thomas in April 2001 and a superseding indictment in October 2003. The superseding indictment charged: Hobbs Act conspiracy, 18 U.S.C. § 1951; Hobbs Act robbery, *id.*; and murder during a robbery, 18 U.S.C. §§ 924(c), (j). It further charged Taylor and Thomas with felony possession of a firearm, 18 U.S.C. §§ 922(g)(1), 924(a)(2).

A jury convicted Taylor and Thomas on all counts in September 2004. The government initially requested the death penalty, but, after the jury rejected it for Taylor, the government dropped the request for Thomas. The district judge sentenced Taylor and Thomas to life in prison on the felony-murder count and lengthy sentences on the remaining counts. Taylor and Thomas appealed. We twice ordered an evidentiary hearing and supplemental proceedings on whether the government's peremptory challenges during voir dire violated *Batson v. Kentucky*, 476 U.S. 79 (1986). *United States v. Taylor*, 509 F.3d 839 (7th Cir. 2007); *United States v. Taylor*, 277 F. App'x 610 (7th Cir. 2008). In *United States v. Taylor*, 636 F.3d 901 (7th Cir. 2011), we ordered a new trial.

The second trial began in May 2012, and again a jury convicted Taylor and Thomas on all counts. The district judge, a different one than the judge who previously presided over the case, also imposed life sentences. Taylor and Thomas again appealed. In *United States v. Taylor*, 794 F.3d 705 (7th Cir. 2015), we held (and the government agreed) that the district court procedurally erred by failing to explain its reasons for rejecting Taylor's and Thomas's substantial mitigation arguments. We therefore ordered resentencing.

## II.

The district judge resentenced Taylor and Thomas in September 2017. The U.S. Sentencing Guidelines recommended a life sentence for both men because of their felony-murder convictions. *See* U.S.S.G. § 2A1.1(a). Both men also had heightened criminal histories due to previous convictions.

At sentencing, Taylor requested a below-guidelines sentence of 30 years in prison. He argued, as he had at the previous sentencing, that his horrific upbringing and youth at the time of the offense merited leniency under Section 3553(a)'s factors. *See* 18 U.S.C. § 3553(a). Taylor was born to a single mother who did not want him. She tried to kill him in utero by drinking heavily, abusing drugs, and even taking quinine capsules. Taylor survived, but he was born three months premature weighing only three and half pounds. His life still mattered little to his mother. She repeatedly abandoned him for stretches of time, and, when she was around, abused him. She beat him with belts, cords, and broomsticks to discipline him; she fed him alcohol and blew marijuana smoke in his face to pacify him; and she called him foul names to demean him. Her home, where Taylor usually lived, was a local site for gambling, prostitution, and drug consumption. When his mother was away, Taylor frequently lived with his aunt. She, too, beat and neglected him. Taylor did have two role models—a different aunt and his grandmother—but they both died of cancer in Taylor's teenage years.

Taylor was on the streets early. As a toddler, local men used him as a pawn in their burglaries. As a middle-schooler, he learned how to gamble, commit crimes, and deal drugs. He entered the social-services system at age 11, where professionals observed his emotional, social, and sleep abnormalities.

He was diagnosed at age 13 with an IQ of 71. Unable to keep up at school, Taylor began to accumulate a criminal record: at age 11, he was convicted of burglary; at 16, he was convicted of armed robbery; and at 18, he was convicted of possession of drugs. At age 19, he committed the armed robbery with Thomas and killed Freund.

Taylor also highlighted at his resentencing the efforts he has made at reform since incarceration. In prison, Taylor completed hundreds of educational programs, achieved his GED, and has become a better father to his children. A retesting of his IQ put it at 92, which an expert attributed in part to the structure of prison. Taylor further cited statistics showing that most homicide defendants serve less-than-life sentences, and he submitted that he posed a low risk of recidivism given the age at which he would exit prison even with a 30-year sentence.

At Thomas's sentencing, he too requested a below-guidelines sentence of 30 years. Like Taylor, he argued that his troubled childhood and familial disfunction warranted less than life in prison. As an expert report submitted by Thomas showed, his family history was rife with alcohol and drug abuse. Thomas's mother was no exception. She became pregnant with Thomas at age 18 but continued to use drugs and alcohol often. After Thomas's birth, his mother struggled to raise him and, later, his younger sister. Thomas's mother never held steady employment and struggled with a crack-cocaine addiction. She also suffered frequent abuse from the men she dated. Thomas saw his mother beaten with a hammer, chased with a knife, and threatened with a pistol. Thomas and his sister suffered abuse of their own, most often at the hands of their mother. Thomas's home, like Taylor's,

was no place for a child, often overrun with partygoers using illegal drugs and consuming alcohol in excess.

Thomas's father was not around during his childhood. He moved to Minnesota when Thomas was young. Thomas visited occasionally, but those visits often went poorly with Thomas witnessing his father abuse drugs, alcohol, and women in front of him.

Thomas also faced loss. When Thomas was age 13, his father's girlfriend stabbed his father to death. Less than a year later, one of Thomas's closest friends died, potentially the result of an overdose. The decedent's sister, another one of Thomas's closest friends, was murdered by her boyfriend not long after. Thomas struggled after these deaths, isolating himself and attempting to deal with mental-health issues. But he never received proper treatment. He later lost two more friends to violent deaths. Thomas also struggled in school. As a teenager, he turned to the streets, drugs, and alcohol. He smoked marijuana daily, drank often, and carried a gun. At age 19, he went to prison for felony robbery. He had misdemeanors at ages 18 and 19 for battery and resisting law enforcement.

Thomas resubmitted an earlier expert report, which opined that he suffered from dysthymic disorder (a form of depression, essentially) and substance dependence. The same expert created a table comparing Thomas's biographical, developmental, and psychological data to predictors of youth violence identified by the Department of Justice. Thomas demonstrated 23 out of the 27 factors, including childhood maltreatment, academic failure, poverty, and exposure to violence and racial prejudice.

In addition to citing his disadvantaged youth at resentencing, Thomas pointed to a few other materially mitigating facts. First, he was not the shooter; Taylor was. Second, Thomas had a purportedly strong record while in federal prison, including the completion of 69 educational courses in parenting, life skills, and cognitive thinking. Third, despite his general absence, he had a good relationship with his son, who has gone on to marry and enlist in the military. At resentencing, Thomas expressed remorse. He also contended, as Taylor did, that the average homicide defendant does not serve life in prison and that he was not a candidate for recidivism given how old he would be when he completed his prison term, which would be lengthy in any event.

The district judge again imposed a life sentence on both Taylor and Thomas for the felony-murder count, plus lengthy, consecutive sentences for the remaining counts. For Taylor, the judge called the crime "a senseless, thoughtless" and "callous[ ]" killing. The district judge also rejected Taylor's argument—that after a 30-year sentence, he would no longer be a danger to society—because of Taylor's already recidivist and criminal history.

The district judge then described at length Taylor's "horrific upbringing." He explained, however, that this case came down to "personal choice" and Taylor's decision to kill Freund. The district judge considered, but gave little weight to, Taylor's previous low IQ score. He reasoned that Taylor's intelligence was not tested near the time of the crime and that he did not think Taylor's intelligence so abnormal that Taylor could have not appreciated the consequences of his conduct. The district judge further addressed a letter Taylor wrote to the judge. In it, Taylor said that he hoped to get past this

"unfortunate life changing situation" and hoped to see "some type of light at the end of this dark tunnel." According to the district judge, this reflected a lack of acceptance and personal responsibility.

For Thomas, the district judge provided similar reasoning. He emphasized the heinousness of the offense and killing. He accounted for Thomas's awful childhood, but noted, again, that Thomas had made the decision to partake in a violent robbery knowing the possible consequences. As the district judge put it:

> No child should experience with [sic] Mr. Thomas did in growing up. No person should have to struggle with such mental health issues or substance dependence, and yet the experience is all too common. But despite these terrible circumstances, most people with these characteristics do not end up in first-degree murders … . [B]ased on my personal observations and my 35-plus years of sitting on this bench, I can say that one important factor that separates those who end up criminals from those who do not is choice, personal choice … . I have carefully considered Mr. Thomas's very harsh upbringing and mental health struggles, but I have also carefully considered his decision making.

The district judge rejected the reliance on average-sentencing data as unpersuasive. He further noted a concern for protecting the public from Thomas given his criminal history.

### III.

Taylor and Thomas appeal their life sentences. They do not contend that the district judge procedurally erred by failing to consider any of their mitigating arguments under Section

3553(a). They instead argue that, even after the district judge's full consideration, the decision to impose life sentences was substantively unreasonable.

This argument is a steep uphill climb for any defendant to make. Section 3553(a) provides a template: it instructs sentencing judges to consider several factors, including the nature and circumstances of the offense, the history and characteristics of the defendant, the need to afford specific and general deterrence, and potentially unwarranted sentencing disparities. 18 U.S.C. § 3553(a). But it leaves to the sentencing judge's discretion how to fill in that template based on the facts and circumstances of a particular case and a particular defendant. *United States v. Lewis*, 842 F.3d 467, 477 (7th Cir. 2016). For that reason, our review is for an abuse of discretion. *United States v. Thompson*, 864 F.3d 837, 841 (7th Cir. 2017). A sentencing judge's weighing of Section 3553(a)'s factors "must fall within the bounds of reason, but those bounds are wide." *United States v. Cunningham*, 883 F.3d 690, 702 (7th Cir. 2018) (quotations and modifications omitted).

Where, as here, a sentence falls within the properly calculated guidelines range, our review is even more deferential: we presume that the sentence is reasonable. *United States v. Faulkner*, 885 F.3d 488, 498 (7th Cir. 2018). This rule holds even when the guidelines range is life in prison. *United States v. Tanner*, 628 F.3d 890, 908 (7th Cir. 2010). To keep the presumption of reasonableness, a sentencing judge "need provide only a justification for its sentence adequate to allow for meaningful appellate review and to promote the perception of fair sentencing." *United States v. Horton*, 770 F.3d 582, 585 (7th Cir. 2014) (per curiam). A defendant bears the burden to rebut the presumption of reasonableness, which he may only do by

showing that the sentence does not comport with Section 3553(a)'s factors. *United States v. Solomon*, 892 F.3d 273, 278 (7th Cir. 2018).

Taylor and Thomas have not carried that burden. The district judge considered, weighed, and applied the relevant Section 3553(a) factors. He evaluated the history and characteristics of Taylor and Thomas, which he thought cut both ways—they faced traumatic upbringings and likely experienced mental-health problems, but they, unlike many who endure similar suffering, made the decision to turn to violent crime. The district judge evaluated the nature and circumstances of the offense, which he found to be a callous and heartless killing of an innocent elderly man. And he considered the need for both specific and general deterrence. He concluded that Taylor and Thomas had repeatedly shown a propensity for crime that he did not think would extinguish with age, and the community needed to know that fatal crimes would be severely punished. The district judge also considered and rejected Taylor and Thomas's arguments about the need to avoid sentencing disparities, concluding that the averages they cited were unavailing and did not account for the specifics of their crime. Indeed, as Taylor and Thomas recognized at their sentencings, the district judge considered each of their arguments. The life sentences he imposed accounted for the choices Taylor and Thomas made, the severity of their crime, and the need for deterrence.

On appeal, Taylor and Thomas rehash arguments made to, and rejected by, the district judge. They recount their upbringings and explain how the trauma they faced in their formative years led them to crime. We have no doubt about the validity of those arguments, and, if the district judge had

failed to account for them, Taylor and Thomas may be entitled to a resentencing. But he did, thoroughly, and we do not sit to substitute our judgment with that of the sentencing judge. *E.g.*, *United States v. Warner*, 792 F.3d 847, 856 (7th Cir. 2015). Taylor and Thomas also recite the arguments they made below about, for example, their growth in prison and the need to avoid unwarranted sentencing disparities. It is enough to say, again, that the district judge fully considered those arguments, and concluded that they did not outweigh the choice Taylor and Thomas made to engage in violent crime and take another life.

Ordering a defendant to spend the remainder of his life in prison, either actually or effectively, is not a punishment that sentencing judges should mete out "lightly." *United States v. Volpendesto*, 746 F.3d 273, 299 (7th Cir. 2014) (quoting *United States v. Wurzinger*, 467 F.3d 649, 652 (7th Cir. 2006)). The sentencing decisions here, however, reflect careful evaluations of the facts and circumstances. We have no grounds to reverse.

The district court's judgments are therefore **AFFIRMED**.