**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TYREE DEANGELO CADE, a/k/a Baby
Monc,

    Defendant - Appellant.

No. 18-6110
(D.C. No. 5:17-CR-00212-F-1)
(W.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **LUCERO**, and **MORITZ**, Circuit Judges.
_____

Tyree Cade pleaded guilty to two counts of being a felon in possession of

ammunition. *See* 18 U.S.C. § 922(g)(1). Based on a total offense level of 30 and a

criminal-history category of IV, the Presentence Investigation Report (PSR)

determined that the United States Sentencing Guidelines (the Guidelines) called for a

sentence of 135 to 168 months in prison. Nevertheless, the district court imposed a

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment isn't binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel.
But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R.
32.1.

200-month prison sentence. Cade appeals, arguing his sentence is substantively unreasonable. For the reasons discussed below, we reject this argument and affirm.

**Background**

The government charged Cade with two counts of being a felon in possession of ammunition after he shot at Richard McFall on two separate occasions. Cade ultimately pleaded guilty to both counts, and the PSR calculated a Guidelines range of 135 to 168 months in prison. The PSR also detailed Cade's extensive criminal history, including a conviction for attempted first-degree burglary, two convictions for unlawfully possessing a firearm, a pending charge for assault with a dangerous weapon, and dismissed-but-soon-to-be-refiled charges for drug trafficking.

Before sentencing, Cade filed a memorandum describing his traumatic upbringing. The memorandum recited that Cade's mother was murdered when he was only six years old, and his aunt was killed soon thereafter. Then, when Cade was only 11, his sister died as well. Cade suffered from depression and other mental-health disorders but never received adequate treatment for "these deeply rooted issues." R. vol. 1, 40. And although Cade's grandparents worked hard to provide for Cade, his siblings, and his cousins—all seven of whom eventually came to live with Cade's grandparents in their three-bedroom house—his grandparents' "insignificant income," "the trauma suffered by their grandchildren," and the "unhealthy neighborhood" where they lived "overcame even [his grandparents'] strongest efforts." *Id.* As a result, Cade sought "support, shelter, safety, and love" from another source: membership in a gang. *Id.* (emphasis omitted). Yet despite his difficult

childhood, Cade later managed to find work as an electrician, sought to be a good father to his children, and reconnected with his own absentee father.

Citing these circumstances and Cade's potential for rehabilitation, defense counsel asked the district court to "grant leniency upon him by imposing a sentence at the low end of the [Guidelines] range." *Id.* at 51. But the government objected to this request. It argued that the crimes of conviction belied the true severity of Cade's underlying violent conduct. That conduct, the government explained, involved much more than mere possession of ammunition: Cade twice shot at McFall, and surveillance video suggested the first shooting was an attempt to injure, if not kill, his victim. The government also cited Cade's blatant disrespect for law enforcement and the criminal-justice system, his history of gun possession, his repeated acts of violence, and his postarrest conduct. In particular, the government noted that Cade engaged in a physical altercation with McFall after the two men were arrested; spit on McFall after McFall testified against Cade in state court; and assaulted a correctional officer while in custody. Thus, the government urged the district court to impose an upward variance and sentence Cade to 240 months in prison.

At the sentencing hearing, the district court recognized that it was "required to consider several statutory factors" in determining the appropriate sentence, including "the need to promote respect for the law"; "the need to afford" both specific and general deterrence; "the need to provide correctional treatment"; and "the need to protect the public from other crimes of this defendant." R. vol. 3, 58–59; *see also* 18 U.S.C. § 3553(a) (listing factors district court must consider "in determining the

3

particular sentence to be imposed"). The district court then acknowledged Cade's traumatic upbringing, repeatedly stating that Cade "lived a hellish life as a young boy." R. vol. 3, 59; *see also* § 3553(a)(1). But the district court also cited both Cade's criminal history and the violent nature of the underlying offenses, ultimately concluding that violence appeared to be "a way of life" for Cade. R. vol. 3, 60.

After listing each of these factors, the district court then explained why some of them weighed less prominently in its sentencing analysis than did others. For instance, the district court explained that it gave little weight to "the need to provide correctional treatment" because it saw no indication Cade would "benefit[] in any significant way from" such treatment. *Id.* at 59; *see also* § 3553(a)(2)(D). Likewise, the court didn't find "the need to afford specific deterrence" particularly compelling because it determined that Cade wasn't "really susceptible [to] any significant deterrence by a sentence imposed by a court." R. vol. 3, 58; *see also* § 3553(a)(2)(B). And although the district court said the need to provide *general* deterrence weighed "a little bit more prominent[ly]" in its analysis, it explained that "the far-and-away predominant sentencing factor" in its decision was "incapacitation"—i.e., "the need to protect the public from [Cade's] other crimes." R. vol. 3, 59; *see also* § 3553(a)(2)(B), (C).

The district court then stated:

> My conclusion, taking into account the sentencing factors I'm required to take into account . . . is that a sentence above the [Guidelines] range but not at the maximum is . . . sufficient but not greater than necessary to achieve the statutory objective of sentencing.

4

It is my conclusion that a sentence of 200 months of incarceration is the sentence [that] is sufficient but not greater than necessary to achieve the statutory objectives of sentencing.

R. vol. 3, 60; *see also* § 3553(a) (requiring district court to "impose a sentence sufficient, but not greater than necessary"). Cade now appeals, arguing that his 200-month sentence is substantively unreasonable.

## Analysis

"Review for substantive reasonableness focuses on 'whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [§ 3553(a)].'" *United States v. Friedman*, 554 F.3d 1301, 1307 (10th Cir. 2009) (quoting *United States v. Alapizco-Valenzuela*, 546 F.3d 1208, 1215 (10th Cir. 2008)); *see also United States v. Walker*, 844 F.3d 1253, 1255 (10th Cir. 2017) (explaining that review for "[s]ubstantive reasonableness focuses on the length of the sentence and requires that sentences be neither too long nor too short"). To that end, our review of the district court's sentencing decision is "informed by the district court's consideration of" the § 3553(a) factors. *Walker*, 844 F.3d at 1256.

But this doesn't mean we may examine de novo either "the weight a district court assigns to" these factors or "its ultimate assessment of the balance between them." *United States v. Smart*, 518 F.3d 800, 808 (10th Cir. 2008). Instead, in reviewing for substantive reasonableness, we ask only "whether the district court abused its discretion in weighing [the] § 3553(a) factors in light of the 'totality of the circumstances.'" *United States v. Sayad*, 589 F.3d 1110, 1118 (10th Cir. 2009) (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). Notably, this deferential

standard of review applies even where, as here, a district court imposes a sentence that falls outside the applicable Guidelines range. *See Gall*, 552 U.S. at 51 (explaining that we "must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance").

In light of the applicable standard of review, "to win a substantive[-]reasonableness appeal is no easy thing." *United States v. Rendon-Alamo*, 621 F.3d 1307, 1310 n.** (10th Cir. 2010). "A district court abuses its discretion" only if "it renders a judgment that is 'arbitrary, capricious, whimsical, or manifestly unreasonable.'" *United States v. Munoz-Nava*, 524 F.3d 1137, 1146 (10th Cir. 2008) (quoting *United States v. Byrne*, 171 F.3d 1231, 1235 (10th Cir. 1999)). Inherent in this standard is the notion that there will often "be a range of possible [sentences] the facts and law at issue can fairly support." *United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007). And "rather than pick and choose among" the possible sentences ourselves, we must instead "defer to the district court's judgment so long as it falls within the realm of these rationally available choices." *Id.* Thus, even if we might "disagree[] with the [district court's] conclusion that consideration of the § 3553(a) factors justified a marked deviation from the Guidelines range," such disagreement is insufficient "to support a holding that the district court abused its discretion." *United States v. Lente*, 759 F.3d 1149, 1158 (10th Cir. 2014) (quoting *Smart*, 518 F.3d at 808).

Nevertheless, substantive-reasonableness review is no toothless formality. *See United States v. Pinson*, 542 F.3d 822, 836 (10th Cir. 2008) ("[A]ppellate review

6

continues to have an important role to play and must not be regarded as a rubber stamp."). District courts will sometimes "impose sentences that are unreasonable." *Rita v. United States*, 551 U.S. 338, 354 (2007). And we have a duty "to correct such mistakes when they occur." *Id.* Thus, we will not hesitate to deem a sentence substantively unreasonable if "the balance struck by the district court among the factors set out in § 3553(a) is . . . arbitrary, capricious, or manifestly unreasonable." *United States v. Sells*, 541 F.3d 1227, 1239 (10th Cir. 2008); *see also, e.g.*, *Walker*, 844 F.3d at 1255 (holding that defendant's sentence was substantively unreasonable where district court "placed inadequate weight on" certain § 3553(a) factors).

According to Cade, the district court "struck" just such a "manifestly unreasonable" balance here. *Sells*, 541 F.3d at 1239. Specifically, Cade asserts that the district court placed too much weight on the need "to protect the public from [his] further crimes." § 3553(a)(2)(C). And he insists the district court simultaneously placed too little weight on his "history and characteristics," § 3553(a)(1)—including his "traumatic upbringing," "his lack of . . . substance[-]abuse issue[s], his ability to maintain a good job, and his close ties with his family despite his criminal behavior," Aplt. Br. 12.

We cannot agree. As an initial matter, it's clear that the district court fully appreciated Cade's "history and characteristics." § 3553(a)(1). For instance, the court described Cade's childhood as "hellish" no fewer than four times. R. vol. 3, 59. Likewise, the district court cited Cade's employment history and noted that Cade "had the ability to make good money." *Id.* at 53. But contrary to Cade's arguments,

7

these factors didn't necessarily weigh in favor of a within-Guidelines sentence. As the district court explained, the fact that Cade "had the ability to make a good living and be a good provider" via legitimate channels left the district court "scratching [its] head": what "excuse" did Cade have for turning to crime instead? *Id.* at 53–54. Similarly, after acknowledging Cade's "hellish life as a young boy," the circumstances of the underlying offenses, and Cade's criminal history, the district court ultimately concluded that "violence is a way of life" for Cade. *Id.* at 60. Thus, factors like Cade's ability to make a good living and his difficult childhood "cut both ways." *United States v. Taylor*, 907 F.3d 1046, 1048, 1052 (7th Cir. 2018) (affirming defendants' within-Guidelines sentences where district court "evaluated the history and characteristics of [defendants], which [district court] thought cut both ways— [defendants] faced traumatic upbringings and likely experienced mental-health problems, but they, unlike many who endure similar suffering, made the decision to turn to violent crime").

Under these circumstances, we cannot say the district court abused its discretion in concluding that the violent nature of the instant crimes, coupled with Cade's predilection for violent behavior—which persisted even after his arrest in this case—rendered paramount "the need to protect the public from other crimes of this defendant." R. vol. 3, 59; *cf. Lente*, 759 F.3d at 1173 (noting that although evidence of defendant's difficult childhood could serve as mitigating factor, "the mitigating strength" of such evidence was "severely undercut by [defendant's] post[]conviction conduct" where defendant's "substance abuse continued during her incarceration";

8

explaining that "[e]vidence of childhood trauma, psychological issues, or youthful indiscretion is most powerful when accompanied by signs of recovery").

In particular, Cade has displayed both an obvious willingness to inflict violence upon his intended victims as well as a disregard for the safety of any unintended victims who might be caught in the literal or figurative crossfire. For instance, the underlying offenses each arose from Cade's act of firing a gun in a residential neighborhood. And when Cade and McFall engaged in a physical altercation after both men were arrested, at least one correctional officer had to intervene in order to separate the two. Accordingly, the district court was justified in placing great weight "on the need to protect the public from other crimes of this defendant." R. vol. 3, 59; *cf. United States v. Dace*, 842 F.3d 1067, 1070 (8th Cir. 2016) (affirming upward variance where district court noted that underlying offense conduct "pose[d] a substantial threat to innocent bystanders" and cited "the need to protect the public").

In short, we cannot say "the balance struck by the district court among the factors set out in § 3553(a) [was] . . . arbitrary, capricious, or manifestly unreasonable." *Sells*, 541 F.3d at 1239. Nor can we say the district court's reasons for imposing a 200-month prison sentence, rather than a sentence that fell within the Guidelines range of 135 to 168 months in prison, are "[in]sufficiently compelling to support the degree of the variance." *Gall*, 552 U.S. at 50. Accordingly, we hold that Cade's sentence is substantively reasonable.

## Conclusion

Because Cade fails to demonstrate the district court's sentencing decision falls outside the realm of rationally available choices, we affirm.

Entered for the Court


Nancy L. Moritz
Circuit Judge